IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DARRIN HARDY; JULIE HARDY; BENJAMIN LYNCH, SR.;
SUE WALLACE; JOHN WALLACE; RON TEAGUE;
KATHY TEAGUE; KAREN MEARS;
MARK DRAPER; JENNIFER DRAPER;
RHONDA RICHARDSON; and KAREN WEST                    PLAINTIFFS


        v.                    Civ. No. 08-6094


MALVERN SCHOOL DISTRICT;
DIANE TATUM, BRENDA GULLETT,
ALICE WILLIAMS MAHONY, DR. BEN MAYS,
SAMUEL LEDBETTER, JIM COOPER, and
SHERRY BURROW, members of the
Arkansas State Board of Education;
DR. NACCAMAN WILLIAMS, Vice Chair of
the Arkansas State Board of Education;
and RANDY LAWSON, Chair of the
Arkansas State Board of Education                    DEFENDANTS

## MEMORANDUM OPINION

On June 15, 2009, Plaintiffs in the above-captioned case filed their Fourth Amended Complaint.[1] (Dkt. 81). Plaintiffs allege that the race-based restriction on the ability of students to transfer school districts contained in the Arkansas Public School Choice Act of 1989, Arkansas Code section 6-18-206, is unconstitutional. Specifically, Plaintiffs contend that subsection 6-18-206(f) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[2]

_____

[1] The Court uses the term "Plaintiffs" in reference both to the named Plaintiffs and their minor children, whose school attendance is at issue.

[2] Plaintiffs' Fourth Amended Complaint also alleges that Defendants' actions violate the equal protection and illegal exaction clauses of the Arkansas Constitution and Title VII of the Civil Rights Act of 1964. While the complaint mentions these legal provisions, it never actually alleges

Currently before the Court are Defendant Malvern School District's Motion for Summary Judgment and Judgment on the Pleadings (dkt. 101), the Motion for Summary Judgment by the members of the Arkansas State Board of Education (dkt. 104), Plaintiffs' Motion for Summary Judgment (dkt. 107), and related documents. The Court heard oral arguments on these motions. They raise three key issues: (1) whether the Malvern School District ("Malvern") and the members of the Arkansas State Board of Education ("ASBE") are proper defendants to this action; (2) whether subsection 6-18-206(f) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and (3) whether subsection 6-18-206(f) is severable from the remainder of the Arkansas Public School Choice Act ("School Choice Act"). Based on the legal authority provided to the Court and for reasons reflected herein, we conclude: (1) Malvern is entitled to summary judgment because the undisputed material facts demonstrate that it played no role in the enforcement of subsection 6-18-206(f) against Plaintiffs; and (2) Plaintiffs' claims against the members of the ASBE are barred by the doctrine of sovereign immunity. Based on

causes of action thereunder. Further, in pursuit of this lawsuit, both in their summary judgment motion and at oral arguments, these causes of action went unmentioned. In response to specific questioning by the Court, Plaintiffs indicated that their lawsuit seeks only to address the Equal Protection issue based on *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701 (2007). (tr. p.28-29). Plaintiffs have failed to either plead or pursue their claim under Title VII. Further, based on the Court's rulings herein, the Court declines to retain jurisdiction over Plaintiffs' state-law claims. These claims are therefore **DISMISSED WITHOUT PREJUDICE.**

these holdings, the Court does not reach the issues of whether subsection 6-18-206(f) of the School Choice Act is unconstitutional or whether subsection 6-18-206(f) is severable from the remainder of the Act.

## I. Standard

"Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Uhl v. Swanstrom*, 79 F.3d 751, 754 (8th Cir. 1996). The party moving for summary judgment bears the burden of establishing the absence of issues of material fact in the record and of establishing that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party shows that there are no material issues of fact in dispute, the burden shifts to the nonmoving party to set forth facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial."[3] *Wingate v. Gage County School Dist.*, 528 F.3d 1074, 1078-79 (8th Cir. 2008). Summary judgment is defeated only by a factual dispute that is material to

---

[3] Plaintiffs repeatedly state that they lack information to either admit or deny the facts stated by Malvern and the members of the ASBE. Thus, Plaintiffs have not specifically controverted these facts.

the outcome of the case, *Bailey v. Bayer CropScience L.P.*, 563
F.3d 302, 310 (8th Cir. 2009), and is appropriate if the non-movant
fails "to make a showing sufficient to establish the existence of
an element essential to that party's case, and on which that party
will bear the burden of proof at trial." *Vaughn v. Wallace*, 496
F.3d 908, 910-11 (8th Cir. 2007); *Grey v. City of Oak Grove*, 396
F.3d 1031, 1034 (8th Cir. 2005) ("The mere existence of a factual
dispute is insufficient alone to bar summary judgment; rather, the
dispute must be outcome determinative under prevailing law.").
Because there are no issues of material fact in dispute,
disposition by summary judgment is appropriate.

## II. Undisputed Material Facts

The parties generally do not dispute the facts in this case.
Rather, because they conceptualize the case differently, they
dispute whether particular facts are material to the case's
outcome. The following facts are undisputed and material based on
the applicable law.[4]

1. The Malvern School District is located in Hot Spring County,
   Arkansas. (Dkt. 103, ¶ 1).

2. On or before the spring of 2008, Malvern School District board
   members sought to address the problem of students illegally
   attending school in districts adjacent to Malvern. In

---

[4] The parties do not object to the authenticity of any of the exhibits
before the Court. (tr. p.7-8).

particular, the district sought to force those students who resided within the district's boundaries to attend school at Malvern, unless they had legally transferred to another district. Malvern superintendent Brian Golden, hired July 1, 2008, initiated an effort to address this problem. (Dkt. 103, ¶ 18-20).

3. Because the Malvern School District received state and local funding on a per student basis, illegal attendance posed a financial problem for the district. (Dkt. 103, ¶ 25-26).

4. An investigation during the fall of 2008 revealed that students who resided in the Malvern School District were illegally attending the Bismarck School District, Poyen School District, Ouachita School District, Magnet Cove School District, Lakeside School District, Hot Springs School District, and Glen Rose School District. (Dkt. 103, ¶ 22).

5. Malvern hired an investigator to examine property records, take pictures, and otherwise attempt to determine the residence of the students suspected of illegally attending nonresident districts. (Dkt. 103, ¶ 27).

6. As part of Malvern's enforcement effort, it sent letters to parents in the fall of 2008, informing them that their children were illegally attending nonresident school districts. This letter included a copy of section 16-18-202 of the Arkansas Code. (Dkt. 103, ¶ 28).

7. Some parents took steps to legalize their children's school attendance in nonresident districts. (Dkt. 103, ¶ 30).

8. Illegal attendance in the Bismarck, Hot Springs, and Lakeside school districts was resolved. The affected students were either determined to be properly attending these districts or returned to Malvern. (Dkt. 103, ¶ 23).

9. Malvern determined that approximately 300 students were illegally attending the Poyen, Ouachita, Magnet Cove, and Glen Rose school districts. (Dkt. 103, ¶ 24). Each of these students was Caucasian. (Dkt. 103, ¶ 31).

10. Plaintiffs admitted that based on their residence within the boundaries of the Malvern School District, their children were illegally attending nonresident districts. (Dkt. 103, ¶ 35).

11. Plaintiffs applied for transfers to the Magnet Cove, Bismarck, Glen Rose, and Ouachita school districts under the Arkansas Public School Act, but their transfer applications were denied by those districts because permitting the transfers would violate subsection 6-18-206(f) of the Arkansas Code. (Dkt. 109, ¶ 2).

12. Plaintiffs did not appeal the decisions of the Magnet Cove, Bismarck, Glen Rose, and Ouachita school districts to the Arkansas State Board of Education. (Dkt. 70).

## III. Arkansas Public School Choice Act

There are multiple laws in Arkansas that determine the

propriety of a particular student's attendance in a particular school district. The default rule under the Arkansas Code is that a student must attend school in the district of his or her residence. Ark. Code Ann. § 6-18-202. The constitutionality of this rule is not challenged. Rather, Plaintiffs challenge the constitutionality of a particular subsection of one of its exceptions: subsection 6-18-206(f) of the Arkansas Public School Choice Act.

The School Choice Act is express in its findings and objectives:

> The General Assembly finds that the students in Arkansas's public schools and their parents will become more informed about and involved in the public educational system if students and their parents or guardians are provided greater freedom to determine the most effective school for meeting their individual educational needs. There is no right school for every student, and permitting students to choose from among different schools with differing assets will increase the likelihood that some marginal students will stay in school and that other, more motivated students will find their full academic potential.
>
> The General Assembly further finds that giving more options to parents and students with respect to where the students attend public school will increase the responsiveness and effectiveness of the state's schools since teachers, administrators, and school board members will have added incentive to satisfy the educational needs of the students who reside in the district.
>
> The General Assembly therefore finds that these benefits of enhanced quality and effectiveness in our public schools justify permitting a student to apply for admission to a school in any district beyond the one in which the student resides, provided that the transfer by this student would not adversely affect the desegregation of either district.

Ark. Code Ann. § 6-18-206(a)(2)-(4). To meet these objectives, the Act permits a student to transfer to a nonresident school district subject to a key limitation based on the racial composition of the resident and nonresident districts: the student may not transfer if the percentage of the student's race in the nonresident district exceeds the percentage of the student's race in his or her resident district. Ark. Code Ann. § 6-18-206(f)(1).

The limitation in subdivision 6-18-206(f)(1) is subject to three exceptions. First, a transfer in violation of subdivision 6-18-206(f)(1) is permissible if the resident and nonresident districts are in the same county and the racial composition of each district, as computed by the Arkansas Department of Education ("Department"), remains within twenty-five percent of the county's overall minority percentage. Ark. Code Ann. § 6-18-206(f)(2). Second, a transfer is exempt if neither the resident nor the nonresident district has a minority percentage of the student's race greater than ten percent. Ark. Code Ann. § 6-18-206(f)(3). Finally, where the provisions of subsection 6-18-206(f) conflict with a desegregation order or court-approved desegregation plan, the terms of the order or plan trump the statute. Ark. Code Ann. § 6-18-206(f)(4).

The mechanics of a particular student's transfer are generally handled by the nonresident school district and the Department. Arkansas Code subsection 6-18-206(b) states that before a student

can transfer, the student's parent or guardian must apply to the nonresident district by submitting an application, approved by the Department, to the nonresident district's superintendent. Ark. Code Ann. § 6-18-206(b)(1)(A). The superintendent has thirty days within which to notify the student's parents by letter of whether the student has been accepted or rejected by the nonresident district. Ark. Code Ann. § 6-18-206(b)(1)(B). The district must have preestablished standards by which it evaluates the applications. Ark. Code Ann. § 6-18-206(b)(2)(A). Should a nonresident district reject a student transfer, the student may appeal to the Arkansas State Board of Education for reconsideration. Ark. Code Ann. § 6-18-206(b)(2)(B). The Department is charged with monitoring each school district's compliance with the School Choice Act and developing rules and regulations that ensure proper implementation of its provisions. Ark. Code Ann. §§ 6-18-206(f)(5)-(6), -206(j). The Act grants the ASBE the authority to "resolve disputes" that arise with respect to the Act's implementation and enforcement. Ark. Code Ann. § 6-18-206(g). With this foundation, the Court will proceed to substantive analysis.

## IV.  Analysis

Plaintiffs contend that Defendants have violated their constitutional rights to Equal Protection through the enforcement of the race-based restriction on the ability of students to

transfer school districts contained in subsection 6-18-206(f) of the Arkansas Public School Choice Act.  Both the Malvern School District and the members of the Arkansas State Board of Education have raised threshold arguments that must be addressed before proceeding to the constitutional issue.  Malvern contends that it is entitled to judgment on the pleadings because it is not a proper party to this lawsuit.  Meanwhile, the members of the ASBE claim that the doctrine of sovereign immunity bars the claims against them.  The Court will address these arguments.

### A. Malvern School District

The Malvern School District asserts that it cannot be held liable for Plaintiffs' alleged injuries because it played no role in the transfer procedure set out in the Arkansas Public School Choice Act.  It claims that its enforcement of Arkansas Code section 6-18-202, requiring that students attend school in their district of residence unless granted transfer, is not the source of Plaintiffs' alleged constitutional injury, which is inflicted when a nonresident district rejects a student's transfer based on race. Ark. Code Ann. § 6-18-206(b)(1)(B).  At the core of this contention is the notion that Plaintiffs have failed to state a claim against Malvern for denial of their rights to Equal Protection.

The defense of failure to state a claim may be raised in a motion for judgment on the pleadings.  *St. Paul Ramsey County Medical Center v. Pennington County, S.D.*, 857 F.2d 1185, 1187 (8th

Cir. 1988). Under the School Choice Act, a student who wishes to transfer to a nonresident school district must file his or her application with the superintendent of the nonresident district, who then informs the student of whether the application has been accepted or rejected. Ark. Code Ann. § 6-18-206(b)(1)(A)-(B)(i). Under the statute, the resident school district plays no direct role in determining whether a particular transfer to a nonresident district should be granted or denied. Indeed, the School Choice Act contemplates freedom of choice for parents, and a resident district's ability to veto or influence a student's right to transfer is inconsistent with this purpose. The resident school district's role is therefore limited to providing comparative data concerning "race, gender, and other pertinent information needed to properly monitor compliance" with the Act; it is against this data that the propriety of a transfer must be gauged for the purposes of determining the applicability of subsection 6-18-206(f). Ark. Code Ann. § 6-18-206(i)(1). The constitutionality of this reporting requirement is not challenged.

When determining the propriety of a motion for judgment on the pleadings, the district court must "accept as true all factual allegations set out in the complaint and [must] construe the complaint in the light most favorable to the plaintiffs, drawing all inferences in their favor." *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (internal quotation and

brackets omitted). Plaintiffs' Fourth Amended Complaint suggests

that Malvern improperly placed pressure on nonresident school

districts to reject transferring students on the basis of race. It

states:

> 20. On information and belief, the other school districts
> . . . are, in essence, forced by the Malvern School
> District to deny students admission to their districts
> based solely on race.
> . . . .
>
> 22. When they learned of the admissions decisions
> affecting their children, several of the aggrieved
> parents petitioned Malvern School District to relent in
> pressing the other Defendant school districts to enforce
> the race-based law, but Malvern has denied this and has
> threatened these parents with a misdemeanor and a fine of
> $500.

(Dkt. 81). Such actions would make Malvern complicit in the

alleged violation of Plaintiffs' constitutional rights by

participating in the rejection of their transfers on the basis of

race. Thus, the pleadings do not show a clear right to judgment,

and judgment on the pleadings must be **DENIED**.[5]

Malvern renewed its motion for judgment on the pleadings at

the summary judgment stage of litigation.

> If, on a motion under Rule 12(b)(6) or 12(c), matters
> outside the pleadings are presented to and not excluded

---

[5] This determination is consistent with the Court's previous decision, based solely on the Plaintiffs' Third Amended Complaint, that Plaintiffs had standing to sue Malvern. (Dkt. 76). As a matter of standing, a plaintiff must show "a causal connection between the injury and the conduct complained of--the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court . . . ." *Republican Party of Minn., Third Congressional Dist. v. Klobuchar*, 381 F.3d 785, 792 (8th Cir. 2004). On the face of the complaint, Malvern is alleged to have played a role in the transfer decisions of the nonresident districts.

> by the court, the motion must be treated as one for
> summary judgment under Rule 56. All parties must be
> given a reasonable opportunity to present all the
> material that is pertinent to the motion.

Fed R. Civ. P. 12(d). The parties have filed exhibits, affidavits,

and depositions in support of and in opposition to their motions.

*In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985) (citing

*National Family Ins. Co. v. Exchange Nat'l Bank of Chicago*, 474

F.2d 237 (7th Cir. 1973)). Further, at oral arguments, the parties

agreed that the materials before the Court were sufficient to

decide all issues raised by their motions. (tr. p.79, 16-24).

Therefore, the Court will address Malvern's motion for judgment on

the pleadings as one for summary judgment.

The undisputed factual evidence demonstrates that Malvern only

sought enforcement of Arkansas Code section 6-18-202, which is

unchallenged and requires a student to attend school in the

district where he or she resides unless transfer is granted. In

2008, Malvern faced a funding problem created by falling enrollment

due to students illegally attending school in neighboring

districts. It hired an investigator to determine the residence of

the students suspected of illegally attending nonresident

districts. On confirmation of illegal attendance, Malvern sent

letters to parents in the fall of 2008, informing them that their

children were illegally attending nonresident school districts and

had to enroll in Malvern. The letter referenced and included a

copy of section 16-18-202 of the Arkansas Code. Indeed, Plaintiffs

concede their residence in the Malvern School District and that their children were illegally attending nonresident districts. The evidence further demonstrates that Plaintiffs' transfer applications were filed with districts other than Malvern and that the letters of rejection, referencing the race-based limitation in subsection 16-18-206(f) of the School Choice Act, came from those districts. These letters gave no indication that Malvern was involved in the rejection of any students. Indeed, under the terms of the statute now challenged, Malvern could not have been.

Plaintiffs proceed pursuant to 42 United States Code section 1983. "To establish a cause of action under 42 U.S.C. § 1983, [Plaintiffs] must establish (1) that they have been deprived of a right or privilege secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by [Defendants] acting under color of state law." *Vikse v. Basin Elec. Power Co-op.*, 712 F.2d 374, 377 (8th Cir. 1983); *Jacobsen v. Department of Transp.*, 450 F.3d 778, 779 (8th Cir. 2006). Plaintiffs' causal analysis is tenuous at best. Under their argument, because of Malvern's enforcement of Arkansas Code section 6-18-202, Plaintiffs were forced to attend school in their district of residence. As a result, they applied for transfer under the School Choice Act to the Magnet Cove, Bismarck, Glen Rose, and Ouachita school districts. These districts denied Plaintiffs admission under subsection 6-18-206(f) of the School Choice Act on

the basis of their race. Plaintiffs conclude that because Malvern enforced section 6-18-202, they were forced to seek legal transfer and thereby forced to compete in a race-based admissions system. *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 719 (2007).

Plaintiffs have repeatedly stated that Malvern violated their rights to Equal Protection. In response to questioning concerning what Plaintiffs contend Malvern did wrong in this case, Plaintiffs' counsel stated that "what Malvern did wrong was to implement the provisions of that plan – of the [School Choice] Act." (tr. p.11, 8-9). Counsel continued that "if Malvern granted what my clients desired . . . for their children to be transferred to another school, Malvern would then run afoul of the Section 6-18-206, so their hands are tied in granting the transfers." (tr. p.13, 15-19). This argument confuses both what Malvern could have possibly done based on its inability to affect a transfer to a nonresident district under the School Choice Act and the evidence that has been presented to the Court by the parties. While Malvern could have prevented a student transfer to the Malvern School District based on the dictates of the School Choice Act,[6] it could not, and did

---

[6] "To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." *Pucket v. Hot Springs School Dist. No. 23-2*, 526 F.3d 1151, 1157 (8th Cir. 2008). Plaintiffs can only assert their own injuries. As a result, they lack standing to pursue the claims of individuals attempting to transfer to Malvern.

not, block the transfers in the present case. Malvern's enforcement of Arkansas Code section 6-18-202, which is undisputedly constitutional and dictates school attendance only on the basis of residence, did not proximately cause Plaintiffs' alleged Equal Protection injury. *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000). While Plaintiffs attempt to further inject race into the analysis by arguing that section 6-18-202 enforcement was sought only against white students, the undisputed material facts show that all of the students illegally attending nonresident school districts were Caucasian. Therefore, because the constitutionality of Arkansas Code section 6-18-202 is unchallenged and Malvern was entitled to enforce the statute, summary judgment is **GRANTED.** Plaintiffs' claims against the Malvern School District are **DISMISSED WITH PREJUDICE.**

### B. Members of the Arkansas State Board of Education

The members of the Arkansas State Board of Education claim that the doctrine of sovereign immunity bars the claims against them. The Eleventh Amendment to the United States Constitution provides that the "[j]udicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Based on principles of sovereign immunity, the United States Supreme Court has interpreted the Eleventh Amendment as

prohibiting suit against an unconsenting state by its own citizens. *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). A limited exception to this doctrine exists where a suit seeks to compel or prohibit action by a public officer sued in his or her official capacity. *Ex parte Young*, 209 U.S. 123, 155-56 (1908).

The *Ex parte Young* doctrine does not bar suits for declaratory judgment. *Dakota, Minnesota & Eastern Railroad Corp. v. South Dakota*, 362 F.3d 512, 516 (8th Cir. 2004). Plaintiffs seek:

> B. A declaratory judgment by the Court that defendants' policy of considering race in their Arkansas Public School Choice Act decisions violates the Fourteenth Amendment to the United States Constitution, Title VII of the Civil Rights Act of 1964, and the equal protection and illegal exaction provisions of the Arkansas Constitution;
>
> C. Declaratory judgment prohibiting Defendants' race-based student admission and school choice plan and the disbursement of public funds due to violation of federal and state law, specially the federal and state equal protection provisions, Title VII of the Civil Rights Act of 1964, and Illegal Exaction provision of the Arkansas Constitution (Arc. 16, § 13);
>
> D. Declaratory judgment that the portion of Arkansas Stat. Ann 6-18-206, specially Section (f)(1), mandating race-based school choice violates equal protection and Title VII of the Civil Rights Act of 1964 and is unconstitutional under both the federal and state constitutions and laws;

(Dkt. 81). To obtain relief, a plaintiff must proceed against government officers with some responsibility for enforcement of the challenged law, *Missouri Protection and Advocacy Services, Inc. v. Carnahan,* 499 F.3d 803, 807 (8th Cir. 2007), and "who threaten and

are about to commence proceedings, either of a civil or criminal nature, to enforce" the unconstitutional law against the individual. *Ex parte Young*, 209 U.S. at 156.

The connection between the challenged provision of state law and the state officer sued under *Ex parte Young* "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *American Broadcasting Companies, Inc. v. Ritchie*, 2008 WL 4635377, *3 (D. Minn. 2008) (quoting *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)). The ASBE has very general supervisory responsibility over public schools in Arkansas. Ark. Code Ann. § 6-11-105. This supervisory responsibility extends only in a limited sense to the Arkansas Public School Choice Act. The Act grants the board the authority to "resolve disputes" that arise with respect to the Act's implementation and enforcement by the Department of Education and the nonresident school districts. Ark. Code Ann. § 6-18-206(g). Further, if a student is denied transfer by a nonresident school district, the student may request reconsideration by the ASBE. Ark. Code Ann. § 6-18-206(b)(2)(B)(i). Thus, the board does not participate in an affirmative sense in either the implementation or enforcement of the Act. Rather, it awaits a controversy in the form of a dispute or an appeal to be brought before it. *Friends of Eudora Public*

*School Dist. of Chicot County, Ark. v. Beebe*, 2008 WL 828360, *3 (E.D. Ark. 2008) (holding that despite ASBE's approval of Department's designation of district as being in financial distress, board was not charged with enforcement under the statute). Thus, while the ASBE has limited "enforcement" power, it exists only in a general sense and can only be triggered by the existence of a dispute or an appeal, which may or may not implicate the constitutional concerns at issue in the present case. Ark. Code Ann. § 6-18-206(f)(5)-(6).

Plaintiffs' Fourth Amended Complaint seeks the following injunctive relief:[7]

> E. An injunction permanently prohibiting Defendant, Members of the Arkansas State Board of Education, from disbursing tax monies, based on race-based choice pursuant to School Choice Act of 1989;

(Dkt. 81). This relief implicates the second aspect of the *Ex parte Young* doctrine, that the state official against whom a plaintiff proceeds threaten or prepare to commence proceedings against the plaintiff. *Ex parte Young*, 209 U.S. at 156; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 283 (1997) (evaluating

---

[7] The Court recognizes that Plaintiffs are not required to pursue injunctive relief in order for the Court to declare the School Choice Act unconstitutional. *Mattis v. Schnarr*, 502 F.2d 588, 592 (8th Cir. 1974) ("One testing the constitutionality of a state statute in federal court may ask for declaratory relief only."). However, the ability to enter injunctive relief stopping the alleged constitutional violation bears directly on whether a state officer who actually has enforcement power has been sued. In this sense, while Plaintiffs need not request injunctive relief, the fact that a constitutional violation cannot be remedied causes concern for the Court when applying the *Ex parte Young* exception.

nature of relief sought to determine applicability of *Ex parte Young* doctrine).

Plaintiffs have provided no support for the proposition that the ASBE is charged with responsibility for distributing tax money to schools.[8] Assuming, without deciding, that the power does exist, it is unclear how such a remedy would cure the Equal Protection violations of which Plaintiffs complain.[9] In particular, an order directing the board to withhold tax funds does nothing to stop enforcement of the statute or permit Plaintiffs to transfer to the school districts of their choice. The nonresident school districts and the Department would still be charged with implementing and enforcing the statute; the nonresident districts would simply not receive funding for students who transfer under the School Choice Act.

This problem highlights the fact that the ASBE has not threatened or commenced proceedings against Plaintiffs. *Ex parte Young*, 209 U.S. at 156. Indeed, it lacks this power. The board largely exists to develop educational policy, and its role in the

---

[8] This can be distinguished from general oversight power with respect to budgets. *See, e.g.*, Ark. Code Ann. § 6-11-105 (giving ASBE supervisory power over school budgets); Code Ark R. 005 04 035 (ASBE regulations for implementation of Public School Funding Act of 2003, Ark Code. Ann. § 6-20-2305).

[9] This relief seems better tailored to Plaintiffs' claim for violation of the illegal exaction clause of the Arkansas Constitution. As stated, Plaintiffs have not pursued this claim, and it has been dismissed. Further, the *Ex parte Young* doctrine is available to remedy violations of federal, rather than state, law. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

overall transfer process is extremely limited. It can resolve disputes under the School Choice Act and hear appeals. Plaintiffs have not appealed to the board; the board cannot proactively force Plaintiffs to appeal or enforce the statute against them.[10] Based on the Act's structure, the issue becomes whether Plaintiffs' lawsuit is actually one against the state of Arkansas.

The entities directly charged with implementing and enforcing the School Choice Act are the Department and the nonresident school districts. As discussed, Arkansas Code subsection 6-18-206(b) states that the student's parent or guardian must apply to the nonresident district for transfer. Ark. Code Ann. § 6-18-206(b)(1)(A). The superintendent of the nonresident district informs the student of whether he or she has been accepted or rejected, Ark. Code Ann. § 6-18-206(b)(1)(B), based on standards developed by the district. Ark. Code Ann. § 6-18-206(b)(2)(A). The Department is charged with monitoring each district's compliance with the School Choice Act and developing rules and regulations that ensure proper implementation of its provisions. Ark. Code Ann. §§ 6-18-206(f)(5)-(6), -206(j).

At the core of the present case, Plaintiffs seek a declaratory judgment that the utilization of racial classifications in the

---

[10] The Court has held that exhaustion of administrative remedies was not required in this case. (Dkt. 76). The issue of whether exhaustion is required based on the nature of the constitutional claim brought by a plaintiff is distinct from whether the proper defendants are before the Court.

School Choice Act is unconstitutional. This Court has the general power to declare that a state statute violates the federal constitution. However, under Arkansas state law, the ASBE is an entity distinct from both the Department and the nonresident school districts. "While under the doctrine set forth in [*Ex parte Young*] state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies." *Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007). Plaintiffs concede that no relief can be granted via the ASBE.[11] (tr. p.14, 13-14). While this Court has the power to direct officials within these entities not to enforce an unconstitutional law, the ASBE does not. The board cannot waive the requirements of state law. The Court may "question whether the suit and the remedy it seeks implicate special sovereignty interests such that an *Ex Parte Young* action will not lie." *Union Elec. Co. v. Missouri Dept. of Conservation*, 366 F.3d 655, 658 (8th Cir. 2004) (internal quotation omitted). To grant relief, the Court would have to order parties not currently before it, which include a state agency, to cease in the conduct mandated by the School Choice Act. Such a course, coupled with the declaration that a state statute is unconstitutional, forces the Court to

---

[11] Indeed, in a broader sense, Plaintiffs state that they only sued the members of the ASBE based on their belief that the state had to be a party to this action. (tr. p.14-15)

conclude that in its current posture, this suit is one against the state of Arkansas and runs afoul of *Ex parte Young*.

Assuming section 6-18-206(f) violates the Equal Protection Clause, the members of the ASBE could potentially violate Plaintiffs' constitutional rights at an indeterminate point in the future. However, they can only do so when Plaintiffs pursue a permissive appeal under the statute. The state officers and nonresident-district entities, identified herein, directly charged with enforcing the School Choice Act are not before this Court.[12] Therefore, the members of the Arkansas State Board of Education are **DISMISSED WITHOUT PREJUDICE.**

### V. Conclusion

For the foregoing reasons, Defendant Malvern School District's Motion for Summary Judgment and Judgment on the Pleadings (dkt. 101) is **GRANTED**, and the claims against it are **DISMISSED WITH PREJUDICE.** The Court cannot reach the merits of the Motion for Summary Judgment by the members of the Arkansas State Board of Education (dkt. 104) or Plaintiffs' Motion for Summary Judgment

---

[12] While the constitutionality of the Public School Choice Act is called into question by the decision of the United States Supreme Court in *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, we cannot reach the constitutional issue based on the parties currently before the Court and the relief sought. The Court expressed concern during the hearing of January 26, 2010, regarding whether the proper parties were before it and that concern now mandates dismissal of this suit. (tr. p.4-6). Plaintiffs' suit has potential consequences that extend to all corners of the state and impact thousands of lives. Proceeding to the merits, while faced with the prospect of reversal due to the presence of improper defendants, would be an imprudent course of action.

(dkt. 107) because Plaintiffs have not proceeded in a manner consistent with the doctrine of *Ex parte Young*. Based on this determination, the members of the Arkansas State Board of Education are **DISMISSED WITHOUT PREJUDICE.** To the extent the Motion for Summary Judgment by the members of the Arkansas State Board of Education (dkt. 104) or Plaintiffs' Motion for Summary Judgment (dkt. 107) addresses the merits of the constitutionality of the race-based transfer restriction in the Arkansas Public School Choice Act, the motions are **DENIED AS MOOT.**[13] Each party is responsible for its own fees and costs.

IT IS SO ORDERED this 16th day of March 2010.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge

---

[13] In light of the pleading defects, both in terms of stating causes of action and seeking proper relief, the Court will not grant Plaintiffs an opportunity to file a fifth amended complaint. However, nothing in this opinion should be interpreted as prohibiting Plaintiffs from pursuing their claims against proper parties in a subsequent action.